**EL DIA, INC., et al., Plaintiffs,**

v.

**Governor Pedro ROSSELLO, et al., Defendants.**

**No. CIV. 97–2841 JAF.**

United States District Court, D. Puerto Rico.

Aug. 28, 1998.

---

Arturo Trias, Trias, Acevedo & Otero, San Juan, PR, Bruce W. Sanford, Mark A. Cymrot, Frederick W. Chockley, Robert D. Lystad, Bruce D. Brown, Baker and Hostetler LLP, Washington, DC, for El Dia, Inc., Puerto Rican Cement Co., Inc., Desarrollos Multiples Insulares, Inc.

John M. Garcia–Nokonechna, Garcia & Fernandez Law Offices, Hato Rey, PR, James F. Hibey, Lisa K. Hsiao, Verner, Liipert, Bernhard, McPherson and Hand, Chtd., Washington, DC, Elfrick Mendez–Morales, Dept. of Justice of PR, Federal Litigation Div., San Juan, PR, William Sherman, Washington, DC, Joseph D. Steinfield, Hill & Barlow, Boston, MA, for Pedro Rossello.

Steven C. Lausell–Stewart, Jimenez, Graffam & Lausell, San Juan, PR, Alberto Rodriguez–Ramos, Martinez, Odell & Calabria, Hato Rey, PR, Elfrick Mendez–Morales, Dept. of Justice of PR, Federal Litigation Div., San Juan, PR, Adam J. Hodkin, Roma W. Theus II, Brian K. Hole, Holland and Knight LLP, Fort Lauderdale, FL, for Norma Burgos.

Andres Guillemard–Noble, Nachman, Guillemard & Rebollo, Santurce, PR, Elfrick Mendez–Morales, Dept. of Justice of PR, Federal Litigation Div., San Juan, PR, David H. Marion, Jeremy D. Mishkin, Montgomery, McCracker, Philadelphia, PA, for Angel Morey.

Frank Gotay–Barquet, Feldstein, Gelpi, Hernandez & Gotay, Old San Juan, PR, William L. Patton, Boston, MA, Thomas B. Smith, Douglas Hallward–Deiemeier, Ropes & Gray, Washington, DC, for Pedro Rosario–Urdaz.

David C. Indiano–Vicic, Indiano, Williams & Weinstein–Bacal, Hato Rey, PR, Elfrick Mendez–Morales, Dept. of Justice of PR, Federal Litigation Div., San Juan, PR, for Jose A. Alicea–Rivera.

Luis Berrios–Amadeo, Cancio, Nadal, Rivera & Diaz, San Juan, PR, Jose A. Alicea–Rivera, Elfrick Mendez–Morales, Dept. of Justice of PR, Federal Litigation Div., San Juan, PR, Sheldon H. Nahmod, Chicago, IL, for Maria Gordillo, Jose Caballero, Jose Rios–Davila.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs, El Día, Inc., publisher of Puerto Rico's principal newspaper, *El Nuevo Día,* Puerto Rican Cement Company, Inc. (Puerto Rican Cement), and Desarrollos Múltiples Insulares, Inc., bring suit pursuant to 42 U.S.C. § 1983 against Defendants Pedro Rosselló, Press Secretary Pedro Rosario–Urdaz, Chief of Staff Angel Morey, Secretary of State Norma Burgos, Secretary of Consumer Affairs José A. Alicea–Rivera, and members of the Puerto Rico Planning Board María Gordillo, José Caballero, and José Ríos–Dávila (collectively "Defendants"). Plaintiffs allege that Defendants violated their First–Amendment rights by (1) withdrawing advertising contracts from *El Nuevo Día* in retaliation for critical news coverage in *El Nuevo Día;* (2) revoking governmental approval for a Puerto Rican Cement project; (3) revoking approval for a Puerto Rican Cement permit; and (4) threatening Puerto Rican Cement with a fine.

In Count I of the Complaint, Plaintiffs allege that Defendants Rosselló, Morey, and Rosario–Urdaz violated El Día's First–Amendment rights. In Court II, Plaintiffs allege that Defendants violated Puerto Rican Cement's First Amendment rights by retaliating against *El Nuevo Día's* critical coverage of the Rosselló administration by engaging in arbitrary acts against Puerto Rican Cement. In Count III, Plaintiffs allege that Defendants' retaliatory actions abridged Puerto Rican Cement's due process rights.

Before the court is Defendants' Joint Motion for Dismissal of Certain Claims and Brief in Support Thereof. Defendants move for dismissal of certain claims based on the doctrines of absolute and qualified immunity.

We find that no Defendant is entitled to absolute immunity from suit by Plaintiffs and that no Defendant is entitled to qualified immunity from suit as to Count I. However, we find that Defendants have qualified immunity from suit for monetary damages in relation to Counts II and III.

The adjudication of a motion to dismiss requires the court to view the facts in the light most favorable to the nonmoving party. This plaintiff-oriented lens guides our review of a motion for qualified immunity as well because the court need determine only if the right allegedly violated was a clearly established one. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). This strictly legal inquiry does not require us to chronicle the richly detailed accusations in the complaint. Rather, we sketch an accurate but abbreviated summary of the allegations. *See Elder v. Holloway*, 510 U.S. 510, 516, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994) (holding that a qualified immunity inquiry presents a question of law, rather than one of fact).

## I.

### *Facts*

*El Nuevo Día,* the most widely read daily newspaper in Puerto Rico, published investigative reports throughout the early months of 1997, alleging patterns of fraud and waste in the Rosselló Administration. On April 13, 1997, *El Nuevo Día* published an article examining the first hundred days of Governor Rosselló's second term, asserting that the Governor had failed in key respects. The following day, Plaintiffs allege, eighteen government agencies began to cancel advertising contracts with *El Nuevo Día* on orders from Defendant Rosselló and others in the upper echelons of his administration. Defendants allegedly withdrew the Commonwealth's extensive, lucrative, and recently-confirmed contracts with *El Nuevo Día* in retaliation for the critical articles published in the newspaper. Furthermore, Plaintiffs allege that Defendants Rosario–Urdaz and Morey pressured the newspaper to change its tone as the Rosselló Administration shifted Commonwealth advertising to the much less-widely distributed competition, while at the

same time the Administration publicly claimed its shift was made on a cost-benefit basis. Plaintiffs assert that because *El Nuevo Día's* cost of advertising per reader is lower than that of the competition, the shift in advertisers could not have been cost effective. Plaintiffs allege that the Administration's cancellations deprived El Día of five hundred thousand dollars a month in advertising revenue and caused a reduction of *El Nuevo Día's* market share for state and municipal advertising from half to 15%, leaving municipalities as the only remaining governmental advertisers.

The Ferré family owns 100% of El Día, which owns *El Nuevo Día* and 7% of Puerto Rican Cement. In addition, the Ferré family owns 25% of Puerto Rican Cement. Plaintiffs allege that the Rosselló Administration engaged in a campaign to persecute Puerto Rican Cement in retaliation for *El Nuevo Día's* critical coverage. Plaintiffs allege that the Administration revoked governmental approval for a Puerto Rican Cement project in Vega Alta subsequent to their cancellation of the advertising contracts. Furthermore, Plaintiffs state that another governmental agency revoked a permit for a Puerto Rican Cement project in Guánica. Finally, Plaintiffs state that Defendants threatened to fine Puerto Rican Cement over $2,000,000 for its purportedly improper labeling of its cement bags. Puerto Rican Cement also alleges that Defendants launched a campaign against several of its business interests to punish *El Nuevo Día's* owners (who also own 25% of Puerto Rican Cement) for the paper's critical press.

## II.

### *Motion to Dismiss Standard*

A defendant may move to dismiss an action against it based only on the pleadings for "failure to state a claim upon which relief can be granted ...." Fed.R.Civ.P. 12(b)(6). In assessing a motion to dismiss, we must accept all well-pleaded facts as true, and draw all reasonable inferences in favor of the Plaintiff. *Aybar v. Crispin–Reyes*, 118 F.3d 10, 13 (1st Cir.1997). However, the court will not accept plaintiffs' unsupported conclusions

or interpretations of law. *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1216 (1st Cir.1996). In the motion to dismiss, the only basis proffered by Defendants for dismissal is their protection by official immunity. We, therefore, restrict our discussion to such questions of immunity, deferring substantive bases for dismissal until Defendants so move according to this court's scheduling orders.

### III.

### *Immunity Standards*

In the motion to dismiss, Defendants claim that the doctrines of qualified and absolute immunity mandate the dismissal of Plaintiffs' claims to the extent that Plaintiffs seek damages from Defendants in their personal capacities. Rosselló, Morey, and Rosario–Urdaz, the three Defendants named in Count I of the Complaint, claim qualified immunity from Plaintiffs' claims for monetary damages in relation to Count I; all Defendants claim qualified immunity from Plaintiffs' claims for monetary damages in relation to Count II; and all Defendants claim qualified immunity from Plaintiffs' claims for monetary damages in relation to Count III. Defendants Alicea–Rivera, Burgos, Gordillo, Caballero, and Ríos–Dávila claim absolute immunity from personal liability in this action.

■ The purpose of immunity is to protect "[t]he societal interest in providing such public officials with the maximum ability to deal fearlessly and impartially with the public at large.... The point of immunity for such officials is to forestall an atmosphere of intimidation that would conflict with their resolve to perform their designated functions in a principled fashion." *Clinton v. Jones,* 520 U.S. 681, 117 S.Ct. 1636, 1644, 137 L.Ed.2d 945 (1997) (holding that the President is not entitled to any immunity from civil lawsuits unrelated to his office). While respecting the sanctity of the rights guaranteed by the constitution, it is our responsibility to insure that these public policy bases for immunity are not eviscerated.

**A. *Absolute Immunity***
■ Defendants Alicea–Rivera, Burgos, Gordillo, Caballero, and Ríos–Dávila claim

absolute immunity arguing that their participation in the activities alleged by Plaintiffs related to the prosecutorial or judicial functions of their respective offices. Under 42 U.S.C. § 1983, individuals may recover for damages resulting from actions by public officials. 42 U.S.C. § 1983 (1994). However, public officials will enjoy absolute immunity if the function for which they are being sued is judicial, legislative or prosecutorial. *Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Defendants also claim that they are protected by the recent case of *Bogan v. Scott–Harris,* 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998), in which the Supreme Court held that "state and regional legislators are entitled to absolute immunity from liability under Section 1983 for their legislative activities" and that "absolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity." *Id.* 523 U.S. ——, 118 S.Ct. at 970, 972 (citations omitted).

Plaintiffs contest these arguments claiming that the above-named Defendants are not entitled to absolute immunity because the actions alleged were not performed as part of the prosecutorial or judicial functions of their respective offices and that some of the alleged actions were performed outside the scope of the actors' jurisdiction.

■ We must apply a "functional approach" when determining if an individual is entitled to immunity. *Clinton v. Jones,* 520 U.S. 681, 117 S.Ct. 1636, 1644, 137 L.Ed.2d 945 (1997). The functional approach requires us to look not only at the identity of the official but also at the functions involved in the allegedly unconstitutional actions. As the Supreme Court explained:

> An official's absolute immunity should extend only to acts in performance of particular functions of his office.... As our opinions have made clear, immunities are grounded in the nature of the function performed, not the identity of the actor who performed it.

*Id.* (citations omitted). Absolute immunity is limited to a relatively small number of state actors. It applies only to,

[a] very limited class of officials ... whose special functions or constitutional status requires complete protection from suit. State executive officials are not entitled to absolute immunity for their official actions. In several instances, moreover, we have concluded that no more than a qualified immunity attaches to administrative employment decisions, even if the same official has absolute immunity when performing other functions.

*Hafer v. Melo*, 502 U.S. 21, 29, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (citations omitted). Furthermore, an official will not be entitled to immunity when an official is acting in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).

Here, Defendants Alicea–Rivera, Burgos, Gordillo, Caballero, and Ríos–Dávila claim absolute immunity arguing the conduct at issue was a product of prosecutorial or judicial functions of their respective offices. However, an analysis of the specific activities that Plaintiffs allege reveals that those alleged activities do not fall within the realm of protected activity.

Plaintiffs allege that Defendants Burgos, Gordillo, Caballero, and Ríos–Dávila violated Plaintiffs' rights by issuing cease and desist orders. The issuing of such orders is an administrative function because the orders involved specific decision-making processes. *See Crymes v. DeKalb County*, 923 F.2d 1482, 1485 (11th Cir.1991) (explaining that, "If the facts utilized in making a decision are specific, rather than general, in nature, then the decision is more likely administrative. Moreover, if the decision impacts specific individuals, rather than the general population, it is more apt to be administrative in nature."). Given Plaintiffs' allegations, Defendants Burgos, Gordillo, Caballero, and Ríos–Dávila are not entitled to absolute immunity from Plaintiffs' claims.

■ Plaintiffs allege that Defendant Alicea–Rivera acted outside the scope of his jurisdiction when he issued an order of intent to fine Puerto Rican Cement. They also allege that the other members of the Puerto Rico Planning Board may have acted outside their jurisdiction when imposing a cease and desist order against Puerto Rican Cement. Officials acting in the "clear absence of all jurisdiction" are not entitled to immunity. *Stump v. Sparkman*, 435 U.S. 349, 357, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Plaintiffs' allegations sufficiently establish that Alicea–Rivera and the other members of the Planning Board are not entitled to absolute immunity from Plaintiffs' claims.

Therefore, according to the functional analysis required by *Clinton v. Jones*, none of Defendants' actions, as alleged by Plaintiffs, were legislative, prosecutorial or judicial in nature, and no Defendant is entitled to absolute immunity from Plaintiffs.

## B. *Qualified Immunity*

■ Qualified immunity is an affirmative defense shielding public officials from civil damages so long as their conduct does not violate any clearly-established statutory or constitutional right of which a reasonable person would be aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Recently, the Supreme Court outlined the qualified immunity standard in *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), which directs judges to focus on the question of whether plaintiffs have alleged a violation of a clearly-established constitutional right. The purpose of the doctrine of qualified immunity is to serve as a counterbalance which permits public officials to engage in "effective and vigorous execution of governmental policies and programs." David Rudovsky, *The Qualified Immunity Doctrine in the Supreme Court: Judicial Activism and the Restriction of Constitutional Rights*, 138 U. Pa. L.Rev. 23, 36 (1989). The Supreme Court has traditionally favored a broad interpretation of qualified immunity, repeatedly commenting that the defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Burns v. Reed*, 500 U.S. 478, 495, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 340, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)); *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). Accordingly, we must apply the careful formula that balances the interests of

civil rights plaintiffs with the effective exercise of public authority to determine whether the alleged activities violate clearly-established rights.

In *Elder v. Holloway*, 510 U.S. 510, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994), the Supreme Court required a court deciding questions of qualified immunity to employ a "full knowledge of its own and [other relevant] precedents." *Id.* 510 U.S. at 516, 114 S.Ct. 1019. The right must be clear enough for a public official to understand the unlawfulness of the alleged action. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Although it must be expressed in the law at a particularized level, an official does not need to be told explicitly what he cannot do. *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034; *St. Hilaire v. City of Laconia,* 71 F.3d 20, 27–28 (1st Cir.1995). The right allegedly violated must be established at the time of the purportedly objectionable conduct, and the connection between the conduct and the right invoked must be direct. *Martinez–Rodriguez v. Colon–Pizarro,* 54 F.3d 980, 988 (1st Cir.1995). "In mounting this inquiry, courts may neither require that state actors faultlessly anticipate the future trajectory of the law ... nor permit claims of qualified immunity to turn to the eventual outcome of a hitherto problematic constitutional analysis." *Id.* 54 F.3d at 988.

To analyze whether or not the right alleged is clearly established, we must look not only to First Circuit case law, but also to that of other circuits. *See, e.g., Camilo Robles v. Hoyos,* 151 F.3d 1, 1998 WL 340000, at * 3(1st Cir.1998) (relying on other circuits' precedents in deciding on whether a supervisory liability issue was clearly established after analyzing the law in the First Circuit); *Vargas–Badillo v. Diaz Torres,* 114 F.3d 3, 6 (1st Cir.1997) (holding that, in accordance with other circuits, the question of whether the Fourth Amendment prohibits warrantless arrests for misdemeanors not committed in the presence of arresting officers did not involve a clearly established right); *Lyons v. Powell,* 838 F.2d 28, 31 (1st Cir.1988) (looking to other circuits and holding that particular treatment of pretrial detainees violated a clearly established due process right).

## IV.

### First Amendment Law

#### A. Count I

In Count I of the Complaint, Plaintiffs allege that Defendants Rosselló, Morey, and Rosario–Urdaz violated El Día's First, Fifth, and Fourteenth Amendment rights. To determine whether Defendants are entitled to qualified immunity protection from the claims in Count I, we must determine whether the right claimed is a clearly-established one.

The First Amendment unequivocally prohibits any law "abridging the freedom of speech, or of the press." It is an explicit command of the broadest scope. *Bridges v. California,* 314 U.S. 252, 263, 62 S.Ct. 190, 86 L.Ed. 192 (1941). While we recognize that the First Circuit has not directly examined First Amendment protection of newspaper advertising, there need not have been an identical factual pattern for us to make a finding regarding qualified immunity. *See K.H., Through Murphy v. Morgan,* 914 F.2d 846, 851 (7th Cir.1990). However, since there have been cases with nearly identical fact patterns considered in other circuits, we will first look to these cases to determine if the right claimed by Plaintiffs has been clearly established. *See Elder v. Holloway,* 510 U.S. 510, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994) (finding that a court may look to case law from other jurisdictions to determine if a right has been clearly established).

For example, in North Mississippi Communications, Inc. v. Jones, 792 F.2d 1330 (5th Cir.1986), the Court of Appeals for the Fifth Circuit reversed a district court's grant of qualified immunity to the DeSoto County Board of Supervisors which withdrew advertising from the *North Mississippi Times* in retaliation for the newspapers' critical articles. The Board of Supervisors had switched its advertising to a newspaper with a far smaller distribution but equal or higher advertising costs, and the plaintiffs alleged that members of the Board had encouraged other businesses not to patronize the *Times.* The

Fifth Circuit found, relying on *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), that "[a]lthough the *Times* may have no 'right' to receive certain legal advertising from the County Board of Supervisors, it would violate the Constitution for the Board to withhold public patronage, in the form of its advertising, from the *Times* in retaliation for that newspaper's exercise of First Amendment rights." *Id.* 792 F.2d at 1337. The Fifth Circuit revisited the case twice, each time confirming its First Amendment finding. *See North Mississippi Communications, Inc. v. Jones*, 874 F.2d 1064 (5th Cir.1989); *North Mississippi Communications, Inc. v. Jones*, 951 F.2d 652 (5th Cir.1992).[1]

In *Frissell v. Rizzo*, 597 F.2d 840 (3rd Cir.1979), the plaintiff, a reader of the *Philadelphia Evening Bulletin*, sued Mayor Frank Rizzo for having withdrawn advertising from the newspaper for its critical coverage of the campaign to permit Mayor Rizzo to run for a third term. In that case, the Court of Appeals for the Third Circuit dismissed the case for lack of standing because the plaintiff was an uninvolved citizen, not the injured newspaper. However, as the court stated: "were the *Bulletin* to press a suit in its own behalf it could readily establish that its First Amendment rights have been violated. The chilling impact of money damages upon legitimate press activity protected by the First Amendment is a constitutional commonplace." *Id.* 597 F.2d at 845. The Third Circuit concluded that the retaliatory withdrawal of advertising is a violation of "settled" First Amendment precepts. *Frissell*, 597 F.2d at 845.

While neither the First Circuit nor the Supreme Court has decided a case with facts identical to the present case, both have decided cases with analogous facts and reached the same conclusion we reach today. These cases, discussed below, affirm that the right of a newspaper to be free from governmental retaliatory actions for exercise of First Amendment rights is clearly established.

In *Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 41 (1st Cir.1992), the First Circuit held that the denial of a land use permit in retaliation for the political opinions of the landowner was unconstitutional. In that case, a landowner and related parties sued the Puerto Rico Planning Board for the denial of permits for waste disposal and residential land uses. *Id.* 964 F.2d at 34. The plaintiffs claimed that board acted based on its discriminatory animus towards them and their political opinions. The First Circuit agreed that a party denied a land-use permit in retaliation for political beliefs has a First Amendment claim. *Id.* 964 F.2d at 40–41. In *Custodio*, the First Circuit confirmed the existence of the right of a company employed by the government not to be punished by the government for exercising protected First Amendment free speech rights.

Furthermore, in *Board of County Commissioners, Wabaunsee County, Kansas v. Umbehr*, 518 U.S. 668, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996), the Supreme Court decided the extent to which the First Amendment protects independent contractors from the termination of at-will government contracts in retaliation for their free speech. In *Umbehr*, the Supreme Court held that a governmental agency cannot make contractual decisions regarding independent contractors in retaliation for their exercise of the right to free speech. *Umbehr* unmistakably expands the umbrella protecting the free speech rights of individual employees to cover independent contractors. As in *Umbehr*, *El Nuevo Día* by accepting government advertising, is essentially an independent contractor and is protected under the same umbrella of free speech rights. The right protected in *Umbehr* and *Custodio* is the very same right claimed by Plaintiffs in Count I of the Complaint.

Defendants argue the First Amendment right claimed by El Día is not clearly established and that they are immune from suit for monetary damages in relation to Count I. However, as we have discussed above, the

---

1. Notably, the Supreme Court has cited *North Mississippi Communications* with approval as an example of one circuit that had found in favor of protecting independent contractors' First Amendment rights from retaliation. *Board of County Commissioners, Wabaunsee County, Kansas v. Umbehr*, 518 U.S. 668, 673, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996).

right claimed by El Día was clearly established in case law before the plaintiffs filed suit. Not only have other circuits facing the identical factual situations recognized the right claimed by Plaintiffs, but also the Supreme Court and the First Circuit have decided cases which recognize this right. In light of the foregoing analysis, we deny Defendants' motion to dismiss Count I on the basis of qualified immunity.

## B. *Count II*

 In Count II of the Complaint, Plaintiffs allege that Defendants Rosselló, Morey, Rosario–Urdaz, Burgos, Alicea–Rivera, Gordillo, Caballero, and Ríos–Dávila violated Puerto Rican Cement's rights under the First, Fifth, and Fourteenth Amendments. They claim that Defendants committed acts and omissions against Puerto Rican Cement which were intended to penalize El Día and *El Nuevo Día* for the publication of critical news articles about the Rosselló administration in *El Nuevo Día*. Puerto Rican Cement claims that it has been and continues to be irreparably harmed and unconstitutionally punished for *El Nueva Día's* exercise of its right to publish articles about the Commonwealth's elected officials. In the motion to dismiss, Defendants claim that Plaintiffs have not successfully stated a claim for violation of Puerto Rican Cement's First Amendment rights because Plaintiffs have not alleged that Puerto Rican Cement spoke, attempted to speak, was prevented from speaking, or otherwise has had its First Amendment rights infringed. We find that Puerto Rican Cement has not established a First Amendment right that has been infringed, and, therefore, that Defendants are protected by qualified immunity from Plaintiffs' claims for monetary damages in relation to Count II.

In the Complaint, Puerto Rican Cement does not allege that Defendants retaliated against it because of its speech or ideas. In fact, Puerto Rican Cement has never alleged that it made any utterance which could be construed as protected speech. Rather, Puerto Rican Cement alleges that its injury results purely from its association with *El Nueva Día*. In *Correa–Martinez v. Arrilla-ga–Belendez*, 903 F.2d 49 (1st Cir.1990), the Court of Appeals for the First Circuit decided a case with facts very similar to the present case. In *Correa–Martinez*, a former administrative employee who was named to a position of trust in the Puerto Rico judicial system filed suit against three jurists under 42 U.S.C. § 1983, claiming that he had been forced to resign from the judicial branch of Puerto Rico's government in violation of his First Amendment and due process rights. The plaintiff claimed that he was forced to resign because of "his close personal association with the former administrative judge with whom defendants have personal and political differences." *Id.* 903 F.2d at 56. The defendants moved to dismiss the case claiming that the plaintiff had not stated a claim under which relief could be granted. The district court agreed and the First Circuit affirmed.

In deciding *Correa–Martinez*, the First Circuit explained that, while "the first amendment protects nonpolicymakers from being drummed out of public service on the basis of their political affiliation or advocacy of ideas," *id.* 903 F.2d at 56:

> [T]he first amendment does not protect against all deprivations arising out of an act of association unless the act itself—say, joining a church or a political party, speaking out on matters of public interest, advocacy of reform—falls within the scope of activities eligible for inclusion within the constitutional tent.

*Id.* 903 F.2d at 57. In other words, like certain types of speech, certain types of associations are protected under the First Amendment. Protected associations include, for example, political or religious associations.

In *Correa–Martinez*, the plaintiff's free speech rights were not violated because he did not allege that he was fired because of his speech or ideas. Rather, he claimed that his termination was due to his friendly association with someone whose political beliefs were disliked by his government employers. However, as his association was one of friendship rather than a constitutionally-protected relationship, the First Circuit found

that Correa did not state a First Amendment claim. The First Circuit explained:

> What is needed is a fact-specific showing that a causal connection exists linking the defendant's conduct, as manifested in the adverse employment decision, to plaintiff's politics, that is, the plaintiff must have pled facts adequate to raise a plausible inference that he was subjected to discrimination based on his political affiliation or views.

*Id.* 903 F.2d at 58. *See also McCusker v. City of Atlantic City,* 959 F.Supp. 669 (D.N.J.1996) (granting the defendant's motion for summary judgment against plaintiff's section 1983 action and finding that former police detectives who claimed that they were demoted because they showed support for another officer who was on trial for criminal charges were not entitled to First Amendment protection because "professional friendship" is not a protected association).

■ The facts of *Correa–Martinez* are patently analogous to the present case. In both situations, the plaintiffs claimed that their First Amendment rights were violated when defendants took action against them in retaliation for an associate's protected beliefs and ideas. In neither case is the plaintiff's association with the entity espousing the political ideas one protected by the First Amendment. In *Correa–Martinez,* the association was friendship—in the present case, the association is related financial interests. Neither friendship nor financial interest is a protected association under the First Amendment.

Because Puerto Rican Cement does not allege that the Defendants harmed it because of its beliefs or ideas or because of an association which is protected by the First Amendment, it has not alleged facts sufficient to establish that Defendants have violated a clearly-established First Amendment right. Therefore, we grant Defendant's motion to dismiss Puerto Rican Cement's First Amendment claim on the basis of qualified immunity.

## V.

### Due Process Law

■ Count III of the Complaint alleges that Defendants Rosselló, Morey, Rosario-Urdaz, Burgos, Alicea–Rivera, Gordillo, Caballero, and Ríos–Dávila violated Puerto Rican Cement's clearly established procedural and substantive due process rights under the Fifth and Fourteenth Amendments. Puerto Rican Cement claims that Defendants' alleged retaliatory actions against it for *El Nueva Día's* articles critical of the Rosselló administration deprived Puerto Rican Cement of property without procedural due process. It also claims that the alleged deprivation was motivated by bad faith and represents an abuse of official authority that shocks the conscience in violation of Puerto Rican Cement's substantive due process rights. The allegations of manipulation of administrative process, if true, would constitute objectionable conduct. However, we find that the rights claimed by Plaintiffs in Count III are not clearly established and that Defendants are protected by qualified immunity from Plaintiffs' claims for monetary damages pursuant to Count III.

■ Plaintiffs allege two types of due process violation: procedural and substantive. Procedural due process claims must be based on an arbitrary or wrongful decision by a government for which the state failed to provide, where appropriate, notice and a hearing before the deprivation of the interest. *See, e.g., Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (requiring opportunity for hearing before deprivation of property). Moreover, if a "random and unauthorized act" caused the deprivation, the plaintiff only has a procedural due process claim if it establishes the unavailability of an adequate post-deprivation state remedy. *See Zinermon v. Burch,* 494 U.S. 113, 129, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Parratt v. Taylor,* 451 U.S. 527, 543, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In contrast, substantive due process forbids arbitrary governmental decisions "regardless of the fairness of the procedures used to implement them." *Zinermon,* 494 U.S. at 125, 110 S.Ct. 975 (quoting *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). Substantive due process protects individuals

against state actions which are "arbitrary and capricious," or those which, in context, appear "shocking or violative of universal standards of decency." *Amsden v. Moran*, 904 F.2d 748, 753–54, 757 (1st Cir.1990) (citations omitted).

Puerto Rican Cement does not allege facts sufficient to establish a procedural due process claim because it does not allege the unavailability of an adequate post-deprivation state remedy. Indeed, Plaintiffs have already had some success in Puerto Rico courts.[2] Therefore, we examine their due process claim only under the law of substantive due process.

■ Courts have sharply curtailed the applicability of substantive due process. Generally, substantive due process rights are disfavored, since "it is no simple matter to decide what abuses to regard as abuses of 'substantive' due process. Every litigant is likely to regard his own case as involving such an injustice." *Custodio*, 964 F.2d at 45. As the Court of Appeals for the First Circuit explained in *PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 31–32 (1st Cir.1991):

> Rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process. Even where state officials have allegedly violated state law or administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation. The doctrine of substantive due process does not protect individuals from all [governmental] actions that infringe liberty or injure property in violation of some law. Rather, substantive due process prevents governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests.

*Id.* (internal quotations and citations omitted).[3] More recently, the First Circuit has stated that, "We have consistently held that the due process clause may not ordinarily be used [in cases involving] the rights and wrongs of local planning disputes.... [w]e have left the door slightly ajar for federal relief in truly horrendous situations." *Custodio* 964 F.2d at 45. Such "truly horrendous" situations rarely arise. " 'It is not enough to show that a regulatory board exceeded, abused or 'distorted' its legal authority.' Indeed, even bad-faith violations of state law do not necessarily implicate an unconstitutional deprivation of due process." *Baker v. Coxe*, 940 F.Supp. 409, 415–416 (D.Mass.1996) (citing *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir.1982) (holding that a local planning board's allegedly arbitrary misapplication of state law did not constitute a substantive due process violation)). Thus, even a substantive due process claim premised on arbitrary, malicious, and bad-faith official action will fail. *See Chiplin Enterprises, Inc. v. City of Lebanon*, 712 F.2d 1524, 1528 (1st Cir.1983).

Substantive due process cases in which a plaintiff has succeeded are extremely rare. As we noted above, in *PFZ Properties* the First Circuit specifically found that substantive due process rights do not protect against a state's arbitrary procedural violations regarding building projects and permits. Therefore, the due process right alleged by Plaintiffs was not clear enough for Defendants to understand the unlawfulness of the alleged actions. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Because Defendants could not have known of the potential to violate Puerto Rican Cement's substantive due process rights at the time they allegedly retaliated against Puerto Rican Cement, the right they claim is not clearly established. Therefore, we find that Defendants are protected by

---

2. *See Departamento de Asuntos del Consumidor v. Puerto Rican Cement*, F–97–004 (Departamento de Asuntos del Consumidor, March 16, 1998) (finding that the threatened two million dollar fine by DACO was unjustified).

3. "[T]he predominant view among the federal courts has denied victims a federal remedy when

a discretionary land use decision is tainted by substantive wrongs such as arbitrariness, improper motive, and personal or partisan bias." Stewart M. Wiener, *Substantive Due process in the Twilight Zone: Protecting Property Interests from Arbitrary Land Use Decisions*, 69 Temple L.Rev. 1467, 1468 (1996).

qualified immunity from Plaintiffs' claims for monetary damages in Count III.

## VI.

### *Conclusion*

For the foregoing reasons, we **DENY** the claims of qualified immunity of Rosselló, Morey, and Rosario–Urdaz from Plaintiffs' claims for monetary damages in relation to Court I. We **GRANT** Defendants' motion to dismiss Plaintiffs' claims for monetary damages in relation to Counts II and III on the basis of Defendants' qualified immunity. We **DENY** the claims of absolute immunity from personal liability in this action made by Defendants Alicea–Rivera, Burgos, Gordillo, Caballero, and Ríos–Dávila.

This Opinion and Order disposes of *Docket Documents Nos. 44, 49, 57, 63, and 66.*

**IT IS SO ORDERED.**